EAST BATON ROUGE PARISH   C-694434
Filed Feb 27, 2020 2:26 PM     21/D
Deputy Clerk of Court

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NUMBER: _____                    DIVISION: "_____"

LATIASHA SMITH WILLIAMS

VERSUS

STATE OF LOUISIANA AND ITS SUBDIVISION, THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES LEBLANC, WARDEN
ROBERT TANNER, CAPTAIN BRINK HILLMANM SERGEANT GARY KING,
SERGEANT JOHN CRAIN, SERGEANT DUSTIN ROGERS, AND JOHN DOE(S)

FILED: _____   DYCLERK: _____

### PETITION FOR DAMAGES

**NOW INTO COURT,** through undersigned counsel, comes petitioner, LATIASHA

SMITH WILLIAMS, in and for the purpose of filing this her Petition for Damages as follows:

1.

Petitioner, LATIASHA SMITH WILLIAMS, is an individual of the full age of majority,

domiciled in the Parish of Tangipahoa, State of Louisiana, and is the duly acknowledged

only child of decedent, ANTHONY CARL SMITH, an unmarried individual of fifty-five (55)

years of age, who died as a result of the actions complained of herein.

As per the judicial determination by Judgment rendered on May 19, 1987, by the

21st Judicial District Court, Parish of Tangipahoa, Docket No. 82,408, in the matter of Lillie

Mae Smith v. Anthony Carl Smith, your petitioner, LATIASHA SMITH WILLIAMS, was

recognized as the minor child of the deceased, ANTHONY CARL SMITH.

LATIASHA SMITH WILLIAMS (hereinafter "WILLIAMS"), therefore, is the proper

party to assert a wrongful death and survival action on behalf of decedent, ANTHONY

CARL SMITH.

2.

Made defendants herein, all of whom are jointly, severally, and in solido obligated

to the petitioner, are as follows:

    a) STATE OF LOUISIANA; and,

    b) LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
    (hereinafter "LDPS"), as a subdivision of the State of Louisiana, and as a
    corporate body with the power to sue and be sued pursuant to La. R.S. §



Certified True and
Correct Copy
CertID: 2020022801162

alice Monais

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

EXHIBIT "A"

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

36:401. The LDPS is domiciled in the Parish of East Baton Rouge, the State of Louisiana, and is responsible for training, rule compliance, and all other matters related to the operation and maintenance of the state prison system; and,

c) SECRETARY JAMES LEBLANC (hereinafter "SECRETARY LEBLANC"), in his individual and official capacity as an employee of the State of Louisiana, a person of the full age of majority, who is domiciled in the Parish of East Baton Rouge, State of Louisiana, and whose responsibility includes, but is not limited to, establishment of appropriate policies, enforcement of those policies, rule compliance, training, and ensuring the appropriate care and custody of all adult offenders in his capacity as the Department of Corrections, a Department of the LDPS; and,

d) WARDEN ROBERT TANNER (hereinafter "WARDEN TANNER"), in his individual and official capacity as an employee of the State of Louisiana, a person of the full age of majority, who is domiciled in the Parish of Washington, State of Louisiana, is the Warden of B.B. Rayburn Correctional Center, located in Washington Parish, State of Louisiana, and his responsibilities include but are not limited to hiring, managing staff, ensuring rule compliance, and making decisions for the operation of the correctional center and the care and custody of adult offenders; and,

e) CAPTAIN BRINK HILLMAN (hereinafter "CAPTAIN HILLMAN"), in his individual and official capacity as an employee of the State of Louisiana, as a Captain at the B.B. Rayburn Correctional Center, an individual of the full age of majority, domiciled in the Parish of Washington, State of Louisiana, and who at all times described herein was responsible for the care, custody, and control of prisoners in the correctional center and supervision of officers within his unit of the correctional center; and,

f) SERGEANT JOHN CRAIN (hereinafter "SERGEANT CRAIN"), in his individual and official capacity as an employee of the State of Louisiana, as a Sergeant at the B.B. Rayburn Correctional Center, an individual of the full age of majority, domiciled in the Parish of Washington, State of Louisiana, and who at all times described herein was responsible for the care, custody, and control of prisoners in the custody of the correctional center; and,

g) SERGEANT GARY KING (hereinafter "SERGEANT KING"), in his individual and official capacity as an employee of the State of Louisiana, as a Sergeant at the B.B. Rayburn Correctional Center, an individual of the full age of majority, domiciled in the Parish of Washington, State of Louisiana, and who at all times described herein was responsible for the care, custody, and control of prisoners in the custody of the correctional center; and,

h) SERGEANT DUSTIN ROGERS (hereinafter "SERGEANT ROGERS"), in his individual and official capacity as an employee of the State of Louisiana, at the B.B. Rayburn Correctional Center, an individual of the full age of majority, domiciled in the Parish of Washington, State of Louisiana, and who at all times described herein was responsible for the care, custody, and control of prisoners in the custody of the correctional center; and,

i) JOHN DOE(S), an individual or individuals to be determined, in their individual and official capacities as employees of the LDPS and the B.B. Rayburn Correctional Center, who at all times described herein were also responsible for the care, custody, and control of prisoners in the custody of the correctional center, including the deceased, ANTHONY CARL SMITH (hereinafter "SMITH").



Certified True and Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

## VENUE

3.

Venue is proper in East Baton Rouge Parish pursuant to La. R.S. § 13:5104 which provides all suits against a state official or employee of the state arising out of the discharge of his official duties or within the course and scope of employment shall be initiated in the parish where the state capital is located or the district court having jurisdiction in the parish which the cause of action arises.

## FACTUAL ALLEGATIONS

4.

SMITH was an offender serving a thirty-year sentence at B.B. Rayburn Correctional Center.

5.

On March 10, 2019, SMITH was fifty-five (55) years old and was housed in the Special Management Unit 4, Cell Two, of the B.B. Rayburn Correctional Center.

6.

Petitioner believes and asserts herein that SMITH was incapable of living in the B.B. Rayburn Correctional Center which was a max-custody unit but should have been housed at a facility such as the Elayn Hunt Correctional Center for medical reasons. The failure of the defendants, individually, and acting together, was negligent and a contributing cause to SMITH's condition and subsequent injury, pain and suffering, and death.

7.

SMITH had a litany of health issues on this date including, but not limited to, diabetes, heart disease, and was recovering from open heart surgery while he was imprisoned in October 2018. His "duty status" orders from a treating physician, required the decedent, due to the risk of a fall, to use a wheelchair at all times and wear a helmet when not lying in bed.

8.

The defendants were obligated to comply with these physician duty status orders.

9.

On March 10, 2019 at 11:24 a.m., SMITH requested medical attention due to a



Certified True and Correct Copy
CertID: 2020022801162

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Self-Declared Emergency, which is the designation an offender voices when he requires immediate medical attention.

10.

SERGEANT KING and SERGEANT CRAIN escorted a walking SMITH, restrained in a waist belt and leg shackles without a helmet, from his cell to the Triage Room on the unit for medical attention.

11.

As such, SERGEANT KING and SERGEANT CRAIN violated SMITH's duty status order to use a wheelchair.

12.

As such, SERGEANT KING and SERGEANT CRAIN violated SMITH'S duty status order to wear a helmet.

13.

Once at the Triage Room, SMITH complained to Nurse Michael Peters about his prescribed medication. Nurse Peters advised he would look into the medication and get back to SMITH.

14.

When SERGEANT KING and SERGEANT CRAIN attempted to then escort SMITH from the Triage Room back to his cell, SMITH coughed and turned his head, and SERGEANT KING and SERGEANT CRAIN perceived this as a threat to spit on them.

15.

SERGEANT KING and SERGEANT CRAIN had no factual basis to conclude that SMITH would in fact attempt or spit on them. SERGEANT KING and SERGEANT CRAIN's actions thereafter were unreasonable and unjustified under the circumstances.

16.

In response to the perceived spit threat, SERGEANT KING and SERGEANT CRAIN forced the handcuffed SMITH onto the floor (hereinafter "throw-down") with SMITH's unhelmeted head striking the ground, SERGEANT KING and SERGEANT CRAIN then activated their beepers for assistance at 11:31 a.m.



**Certified True and Correct Copy**
CertID: 2020022801162

*Alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133. and/or RPC Rule 3.3(a)(3).

17.

Despite the duty status requiring him to wear a helmet, SMITH was not wearing a helmet at this time, and his head striking the floor during this restraint caused a left frontal scalp hemorrhage as revealed in the autopsy performed on March 11, 2019.

18.

Once he was restrained on the ground, SERGEANT KING without a justifiable basis, forcefully plunged his knees into the ribs of SMITH, causing bruising of the left hip area as documented in the autopsy report, and this trauma, combined with the head injury, caused SMITH to vomit.

19.

While SMITH was restrained on the ground, several officers on the unit responded to the beeper for assistance. The officers that responded include, but are not limited to, CAPTAIN HILLMAN, SERGEANT ROGERS, and other JOHN DOE(S) to be identified. CAPTAIN HILLMAN was informed that SMITH threatened to spit on SERGEANT KING and SERGEANT CRAIN.

20.

CAPTAIN HILLMAN then placed a spit mask on SMITH while he was restrained on the floor.

21.

At all material and relevant times, the STATE OF LOUISIANA, B.B Rayburn Correctional Center and/or SECRETARY LEBLANC and/or WARDEN TANNER negligently failed to develop an objective guideline with appropriate safety considerations for the implementation, use, and monitoring of a spit mask.

22.

Alternatively, if there was in place appropriate directives regarding the use of a spit mask, the individual defendants named herein were negligent in complying with the conditions and requirements of said directive(s).

23.

This spit mask was a product kept in inventory for use on prisoners which had been selected and purchased by the STATE OF LOUISIANA and the LDPS for the type of use contemplated for use on prisoners and actually used on SMITH.



Certified True and Correct Copy
CertID: 2020022801162

alice Monaco

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

24.

This type of spit mask has been previously and prior to this event, associated with numerous fatalities due to suffocation in the United States: Fairfax County, Virginia in 2001; Jefferson County, Washington in 2004; Davidson County, Tennessee in 2013; Clay County, Florida in 2013; Midland County, Michigan in 2016; Sacramento, California in 2018; Brevard County, Florida in 2018, etc.

25.

The B.B. Rayburn Correctional Center Directive #3.1.13 provides procedures for the use of force. It states physical handling is justified to subdue unruly offenders; separate participants in a fight; in self-defense; in defending staff, offenders, or other persons; and to move offenders who do not comply with lawful orders. After a use of force, the offender is to be examined by a medical professional as soon as possible and a full body photograph of the offender is to be taken as soon as possible. (Emphasis added in screenshot below).



RCC Directive #3.1.13
Use of Force and Restraints
November 9, 2017
Page #9

**POST USE OF FORCE PROCEURES**

[4092] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮

  1. [4092] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮

  2. Offenders who are handcuffed while on their stomachs will be sat upright as soon as possible.

  3. [4092, 4203] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮

  4. Offenders placed in restraints because of a use of force situation will remain restrained only as long as is necessary to control the specific behavior involved.

. . .



Certified True and
Correct Copy
CertID: 2020022801162

*alice Monais*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

```
RCC Directive #3.1.13
Use of Force and Restraints
November 9, 2017
Page #10


PHOTOGRAPHIC REQUIREMENTS

When force is used against an offender/s, the Shift Supervisor will make reasonable effort to
take full body photographs of the offender/s as soon as possible whether or not there is any
visible injury or allegation of injury.  If possible, the offender should be photographed before
the required post use of force medical examination, including close-up photographs of any
injury or alleged injury. Medical examination/treatment should not be delayed in order to take
the photographs.  Close-up photographs should also be taken of injured areas of the body
after the medical treatment and prior to the application of any bandages.  Photographs of the
genital area should not be taken if there is no injury or alleged injury to that area of the body.
```

26.

After SMITH'S throw-down, and after SMITH'S head injury and other injuries,

CAPTAIN HILLMAN placed the spit mask on SMITH.

27.

A post use of force exam was then conducted by Nurse Michael Peters.  Petitioner

has learned that her father, SMITH, at the time of the post use of force exam, exhibited a

head injury and bruising to the left hip as revealed by the autopsy performed on March

11, 2019.

28.

SMITH, who was then handcuffed, was placed in a wheelchair to be transported

back to his cell.

29.

When SMITH was lifted into the wheelchair, SERGEANT CRAIN observed saliva

and vomit on the floor where SMITH had been thrown down.

30.

SERGEANT ROGERS, SERGEANT KING, SERGEANT CRAIN, and CAPTAIN

HILLMAN transported a limp, but semi-conscious SMITH to cell 9 in the Special

Management Unit by wheelchair.  During transport, SMITH demonstrated obvious signs

of pain and or discomfort, including grunting and moaning noises.  SMITH was then

placed into the bed on his back face-up.

31.

The autopsy report documents and evidences abrasions on both of SMITH's

wrists.  It is believed and asserted herein that these bruises to SMITH's wrists were

Certified True and
Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

caused by SMITH struggling to breathe but was hampered to do so by the spit mask and regurgitation.

32.

Arrangements were made by defendants to move SMITH to a handicapped cell with a spit shield covering the bars. During this interval, SMITH was left lying on his back in cell 9 for approximately fifteen (15) minutes with the spit mask on his face.

33.

SMITH was again handcuffed and placed in a wheelchair, and while breathing, grunting, and mumbling was transported by SERGEANT KING, SERGEANT CRAIN, SERGEANT ROGERS, and CAPTAIN HILLMAN to cell 1 in the Special Management Unit.

34.

SERGEANT KING, SERGEANT CRAIN, SERGEANT ROGERS, and CAPTAIN HILLMAN never removed the spit mask. SMITH was semi-conscious and unable to remove his own spit mask in either cell 9 or cell 1.

35.

CAPTAIN HILLMAN exited cell 1 to retrieve a camera to take a post use of force photograph of SMITH to attempt compliance with Rayburn Correctional Center Directive #3.1.13, even though a post use of force photograph was not taken immediately in the Triage Room as policy required.

36.

When CAPTAIN HILLMAN returned to cell 1, SMITH was called to the bars to be restrained but SMITH did not respond. CAPTAIN HILLMAN announced to SMITH that he was going to enter the cell and would use chemical agent gas if needed, and SMITH remained unresponsive.

37.

Once inside cell 1 with SERGEANT KING, SERGEANT CRAIN, and SERGEANT ROGERS, CAPTAIN HILLMAN removed and did not replace the spit mask on SMITH. He then took the required post use of force photograph of SMITH.

38.

At that time, it was reported that SMITH was breathing, grunting, and mumbling.



**Certified True and Correct Copy**
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

39.

The first picture taken by CAPTAIN HILLMAN demonstrated visible vomit covering the face of SMITH.

40.

SERGEANT ROGERS handed CAPTAIN HILLMAN a t-shirt from the floor of cell 1, and CAPTAIN HILLMAN used the t-shirt to wipe off, remove, and or conceal the vomit off of SMITH'S face.

41.

Once SMITH's face was clean, CAPTAIN HILLMAN took a second post use of force photograph of SMITH and intentionally deleted the first photograph because CAPTAIN HILLMAN subsequently said the first photo "looked bad." Directive #3.1.18 forbids erasing photographs after use of force without prior written approval as evidenced by the screenshot below.

RCC Directive #3.1.18
Security Equipment Body Cameras
April 6, 2018
Page #2

At the beginning of each shift, they will ensure that the equipment is charged and working properly in accordance with the manufacturer specifications and attach the camera onto their uniform. If the body camera is malfunctioning or lost the officer will notify their supervisor.

Prior to the end of their shift, the Shift/Unit Supervisors will insure that all recorded incidents are documented on an Unusual Occurrence Report. At the end of their shift they are to place the body camera in its docking station to recharge and ensure working/charging order.

The Shift Supervisors will not edit, alter, erase, duplicate, copy, share, or otherwise distribute in any manner body-worn camera images and information without prior written approval.

42.

At this point, SERGEANT ROGERS suggested that the medical staff be called to check on SMITH, to which CAPTAIN HILLMAN replied, "Don't worry about it. We'll check on him later." SERGEANT ROGERS stated that he felt "a little worried" and then SERGEANT ROGERS felt for a pulse on SMITH. SERGEANT ROGERS noted a pulse on SMITH at that time; SMITH was still alive.

43.

SERGEANT CRAIN, who was also worried about the condition of SMITH at that


Certified True and Correct Copy
CertID: 2020022801162

*alice Monico*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

time, also felt SMITH'S pulse and noted he was still alive.  CAPTAIN HILLMAN asked SERGEANT KING and SERGEANT CRAIN whether SMITH was breathing.  SMITH was still alive.

44.

SERGEANT KING observed SMITH breathing and checked his fingers for circulation after the second post use of force photograph was taken.

45.

All officers exited the cell at 12:17 p.m.

46.

After this type of incident, all officers involved are required to complete a very descriptive Unusual Occurrence Report per Directive #3.1.13 as evidenced the screenshot below:

---

**REPORTING REQUIREMENTS**

Use of force situations will be verbally reported to the Warden, or his designee, as soon after the incident as possible.

[4202, 06] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓ The UOR will include, but not necessarily be limited to, the following information:

- A description of the events leading to the use of force;
- An accurate and precise description of the incident and reasons for employing force;
- A detailed description of the force used;
- An accurate and precise description of any devices used in the incident including the brand name of any chemical agent used;
- A detailed description of the application technique;
- How long the offender was face down and/or restrained;
- A detailed description of the results of this application and the point at which the application ceased and compliance was obtained;
- A description of any injuries sustained by those involved;
- A list of participants and witnesses;
- A description of disciplinary action filed as a result of the incident;
- Those supervisors notified;
- Photographs will be taken as described below;

---

(Emphasis added).

47.

CAPTAIN HILLMAN advised SERGEANT CRAIN and SERGEANT ROGERS to "dumb down" their Unusual Occurrence Reports for this incident to be "less descriptive."

48.

SERGEANT CRAIN and SERGEANT ROGERS then "dumbed down" the required report.

Page 10 of 22



**Certified True and Correct Copy**
CertID. 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

49.

The "dumbed-down" report omitted, did not include, and/or misstated several key

facts and time periods per the direction of CAPTAIN HILLMAN.

50.

The policies and procedures for the Special Management Unit, Directive #3.4.1

require rounds to be made visibly checking the offenders in each cell every thirty minutes

at irregular intervals as evidenced by the screenshot (emphasis added) below.

---

RCC Directive #3.4.1
Special Management Unit
December 22, 2017
Page #3

[4252] Offenders will only be placed in isolation, after a fair and impartial hearing, by
authority of the Disciplinary Board.

[4255] No offender will be held in isolation for more than 20 days in a 30-day period. The
balance of isolation time over 20 days in a 30-day period will be served in administrative
segregation. After ten consecutive days in isolation, the offender will be released to
administrative segregation for a period not less than 24 hours. Except for offenders
pending transfer to Extended Lockdown, days spent in administrative segregation on
breaks will be credited toward the offender's isolation time.

[4256] A psychiatrist and/or social worker will personally interview and prepare a written
report on any offender remaining in the Special Management Unit more than 30 days.
Such reports will be completed every 30 days after that the offender remains on the unit
and a mental health assessment will be completed at least every three months.

[4257] Correctional officers will conduct rounds at least every 30 minutes, at irregular
intervals, to personally observe the occupants of each cell on the Special Management
Unit tiers. The medical and/or mental health staff may require more frequent observations
of certain offenders.

---

51.

SERGEANT KING looked into cell 1 at SMITH at 12:39 p.m. and observed SMITH

lying face up on the bed in the same position he was placed in by the officers. When

questioned why he did not enter the cell to check on SMITH, SERGEANT KING stated

he believed SMITH was sleeping.

52.

At 1:11 p.m., SERGEANT KING again looked into cell 1 at an unresponsive SMITH

who had not moved from the same position on his back. SERGEANT KING then exited

the tier.

53.

SERGEANT KING failed to make rounds on SMITH for one hour between 1:13

Page 11 of 22


Certified True and
Correct Copy
CertID: 2020022801162

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

p.m. and 2:13 p.m., but SERGEANT KING falsified his logbook to indicate he did in fact make these rounds.

54.

At 2:15 p.m., SERGEANT KING returned to make rounds on SMITH who was still unresponsive and not moving from his original position. SERGEANT KING poked SMITH on the foot with an ink pen, and when he did not move, SERGEANT KING left the tier and went to alert CAPTAIN HILLMAN.

55.

At 2:30 p.m., CAPTAIN HILLMAN, SERGEANT KING, SERGEANT CRAIN, SERGEANT ROGERS, and Nurse Michael Peters returned to cell 1 and began to perform CPR on SMITH.

56.

SMITH was placed on a stretcher and taken to the Infirmary where CPR continued to be performed and an ambulance was called to service.

57.

As per Infirmary doctor, Dr. Fienberg, CPR was stopped at 3:01 p.m. and the Coroner was notified along with WARDEN TANNER.

58.

SMITH was pronounced dead at 3:01 p.m.

59.

On March 11, 2019, an autopsy was performed by Dr. Michael Defatta of the Washington Parish Coroner's Office.  The autopsy established that SMITH's cause of death was aspiration of gastric contents.

60.

The autopsy also established that SMITH suffered a left front scalp hemorrhage.

61.

The autopsy also established that SMITH sustained patterned abrasions on both wrists from restraint and struggle with handcuffs.

62.

In his role as Supervisor of the Special Management Unit, CAPTAIN HILLMAN knew or should have known of the risks of placing a spit mask on an unresponsive


**Certified True and Correct Copy**
CertID: 2020022801162

*alice Moners*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

offender after an episode of vomiting.

63.

Despite this knowledge, CAPTAIN HILLMAN continued to leave a spit mask over SMITH's mouth as he laid on his back for over an hour.

64.

CAPTAIN HILLMAN knew this action was inappropriate when he wiped off SMITH's face to take a second post use of force photograph and deleted the first photograph.

65.

In their roles as trained correctional officers, SERGEANT KING and SERGEANT CRAIN knew or should have known of the risks of placing a spit mask on an semi-conscious offender after a use of force involving vomiting and placing the offender flat on his back.

66.

SERGEANT KING, SERGEANT CRAIN, and SERGEANT ROGERS knew this action was inappropriate and life threatening when they became concerned for SMITH's medical condition and checked for a pulse.  They also knew this action was inappropriate and life threatening when they assisted CAPTAIN HILLMAN in cleaning SMITH's face for a second post use of force photograph and acquiesced in his deleting the first photograph.

67.

There were also significant delays in medical attention and emergency response by CAPTAIN HILLMAN, SERGEANT KING, SERGEANT CRAIN, and SERGEANT ROGERS since they left the cell of SMITH at 12:17 p.m. and did not return for medical care until 2:34 p.m.

68.

SERGEANT KING used excessive force in forcibly plunging his knee into the ribs of SMITH once SMITH was restrained on the ground of the Triage Room and was not a risk of injuring himself or others. The amount of force used was greater than the minimum force necessary to subdue SMITH.

69.

In his role as Warden of B.B. Rayburn Correctional Center, WARDEN TANNER

Page 13 of 22



Certified True and
Correct Copy
CertID: 2020022801162

alice Monass
East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

knew or should have known of the risks of using spit masks on medically unstable offenders.

### 70.

In his role as Warden of B.B. Rayburn Correctional Center, WARDEN TANNER should have instituted a written procedure for the use of spit masks as a restraint, but he failed to do so.

### 71.

In his role as Warden of B.B. Rayburn Correctional Center, WARDEN TANNER was responsible for ensuring the safe operation of the facility, and as such, is liable for the excessive force of SGT. KING, failure to adequately supervise staff including CAPTAIN HILLMAN, SERGEANT KING, SERGEANT ROGERS and SERGEANT CRAIN, and failure to institute proper protocols for use of restraints such as spit mask.

### 72.

The LDPS and SECRETARY LEBLANC knew or should have known of the risks of suffocation and death due to improper use and or improper monitoring of an offender wearing a spit mask.

### 73.

The Department of Corrections, LDPS and SECRETARY LEBLANC were responsible for implementing, ensuring compliance, and training on the proper procedures for use of restraint devices such a spit mask.

### 74.

By virtue of La. R.S. § 13:5104 and the doctrine of respondeat superior, the STATE OF LOUISIANA, the LDPS, and SECRETARY LEBLANC are liable for the grossly negligent and recklessly indifferent acts of subordinates including WARDEN TANNER, SERGEANT CRAIN, SERGEANT KING, SERGEANT ROGERS, and CAPTAIN HILLMAN.

### 75.

At all times relevant to this petition, all of the defendants acted under color of state law.

### 76.

At all times relevant to this petition, defendants, WARDEN TANNER, CAPTAIN


Certified True and
Correct Copy
CertID: 2020022801162

*alice Monico*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

HILLMAN, SERGEANT KING, SERGEANT ROGERS and SERGEANT CRAIN were employed and were acting in the course and scope of their employment with the by the LDPS.

### 77.

Instead of providing adequate, appropriate, and necessary care for SMITH, defendants treated SMITH in a deliberately indifferent manner, resulting in SMITH's injuries, pain and suffering, and death.

### 78.

The acts and omissions of WARDEN TANNER, SECRETARY LEBLANC, and the STATE OF LOUISIANA and/or LDPS manifested in inadequate staffing, inadequate training and supervision of staff, and inadequate policies and procedures regarding the use and/or monitoring of a spit mask as a means of restraint. These acts and omissions were the proximate cause of the injuries, pain and suffering, and death of SMITH.

## CAUSES OF ACTION

## COUNT I. DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42. U.S.C. § 1983

### 79.

42 U.S.C. § 1983 provides any official acting under color of state law who subjects or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

### 80.

The Defendants named in this petition, SERGEANT KING, SERGEANT CRAIN, SERGEANT ROGERS, and CAPTAIN HILLMAN, under the leadership of the defendants, WARDEN TANNER, SECRETARY LEBLANC, and LDPS, acting individually and together, under color of law, acted to violate SMITH's Constitutional right to be free from cruel and unusual punishment as protected by the Eighth and Fourteenth Amendments to the Constitution of the United States of America.

### 81.

Defendant, WARDEN TANNER, failed to supervise his subordinates namely, CAPTAIN HILLMAN, SERGEANT CRAIN, SERGEANT ROGERS, and SERGEANT KING, to ensure that these subordinates did not act with deliberate indifference by

Certified True and
Correct Copy
CertID: 2020022801162

alice Monaco

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

ignoring the medical needs of SMITH.  WARDEN TANNER also failed to ensure his subordinates provided reasonable and sufficient treatment of offenders, including SMITH.

82.

Defendants, STATE OF LOUISIANA, LDPS, and SECRETARY LEBLANC, failed to ensure that their subordinates and/or employees were adequately trained to provide reasonable and sufficient treatment of offenders, including SMITH.

83.

Defendants, STATE OF LOUISIANA, LDPS, WARDEN TANNER, and SECRETARY LEBLANC, failed to adopt and implement procedures and training on the use of spit masks on offenders in their care and custody.

84.

At all material and relevant times, the defendants named in this petition, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference to the substantial risk of harm of SMITH by using excessive force, failing to provide appropriate medical services, and by substantially departing from accepted professional judgment, practice, and standards.

85.

Petitioner, WILLIAMS, was individually harmed by the actions of the defendants because it resulted in the injuries, pain and suffering, and death of her father, SMITH, which could have been prevented by appropriate medical attention, supervision, and procedures.

### COUNT II. NEGLIGENCE UNDER LOUISIANA CIVIL CODE ARTICLES 2315 AND 2316

86.

The named defendants, acting individually and together, under color of law, engaged in a course of conduct that caused injury, pain and suffering, and death to SMITH.  At all times pertinent herein, these defendants acted recklessly and/or negligently toward SMITH.

87.

The named defendants, individually and together, under color of law, owed a duty of care to SMITH and had the ability to intervene to prevent the tortious conduct of co-defendants to prevent the injury, pain and suffering, and death of SMITH, but failed to do

Certified True and Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133 and/or RPC Rule 3.3(a)(3).

so. The breach of this duty of care is the proximate cause of the injury, pain and suffering, and death of SMITH.

88.

The individual defendants' actions were undertaken within the course and scope of their employment with B.B. Rayburn Correctional Center, the LDPS, and/or the State of Louisiana.

89.

Defendants are liable to petitioner as SMITH's injuries, damages, pain and suffering, and death were caused by the fault of the staff of B.B. Rayburn Correctional Center, including LDPS, SECRETARY LEBLANC, WARDEN TANNER, SERGEANT CRAIN, SERGEANT KING, SERGEANT ROGERS, and CAPTAIN HILLMAN in the following non-exclusive particulars:

    a) Failing to adopt and abide by policies for the use of the spit mask;

    b) Failing to provide SMITH with adequate medical attention;

    c) Substantial delays in providing medical care to SMITH;

    d) Failure to supervise;

    e) Negligent hiring;

    f) Negligent training;

    g) Dereliction of duty; and,

    h) Any and all other acts of negligence which may be proven at trial of this matter;

**COUNT III. WRONGFUL DEATH PURSUANT TO LA. C.C. ART. 2315.2**

90.

Petitioner, WILLIAMS, is the biological, legitimate, and duly acknowledged only child of SMITH, who was not married at the time of his death. As such, WILLIAMS is the rightful beneficiary to recover for the death of her father under Louisiana Civil Code Article 2315.2, which provides:

> "A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
>
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children."

91.

The cumulation of the defendants' actions and inactions were the proximate cause

Page 17 of 22


Certified True and
Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

of the injuries, damages, pain and suffering, and death of SMITH.

92.

WILLIAMS suffered a loss of services, support, society, love, and grief as a result

of her father's death.

**COUNT IV. SURVIVAL ACTION PURSUANT TO LA. C.C. ART. 2315.1**

93.

Louisiana Civil Code Article 2315.1 provides if a person who has been injured by

the offense of another dies, his family may recover damages.

94.

WILLIAMS is the biological, legitimate, and duly acknowledged only child of

SMITH, and is the proper party to recover damages under Louisiana Civil Code Article

2315.1, which provides:

> "A. If a person who has been injured by an offense or quasi offense dies,
> the right to recover all damages for injury to that person, his property or
> otherwise, caused by the offense or quasi offense, shall survive for a
> period of one year from the death of the deceased in favor of:
>
> > (1) The surviving spouse and child or children of the
> > deceased, or either the spouse or the child or children."

95.

WILLIAMS has a right to recover for the injuries and pain and suffering endured by

SMITH from the time he was restrained with a use of excessive force to his ultimate death

from the aspiration of gastric contents as a result of the fault of defendants.

**COMPENSATORY DAMAGES**

96.

As a result of the above-described actions and/or inactions by the defendants,

damages have been incurred as follows:

a) SMITH suffered conscious and severe physical, mental, and emotional distress

and suffering prior to his death;

b) WILLIAMS, the daughter of SMITH, suffered emotional pain and suffering, past,

present, and future, loss of love and affection, and companionship of her father,

SMITH; and,

c) WILLIAMS, the daughter of SMITH, incurred funeral and burial expenses.

Certified True and
Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

## PUNITIVE DAMAGES

97.

When the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or careless indifference to the federally protected rights of others, punitive damages are recoverable under 42 U.S.C. § 1983. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d. 632 (1983).

98.

SERGEANT KING showed evil motive or intent when he forcibly plunged his knees into the ribs of SMITH after SMITH was thrown down on the floor of the Triage Room.

99.

SERGEANT KING, SERGEANT ROGERS, SERGEANT CRAIN, and CAPTAIN HILLMAN showed careless indifference to SMITH's Eighth Amendment right to be free from cruel and unusual punishment when they failed to remove the spit mask despite SMITH's obvious signs of distress and poor medical condition.

100.

SERGEANT KING, SERGEANT ROGERS, SERGEANT CRAIN, and CAPTAIN HILLMAN showed careless indifference to SMITH's Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide him with immediate medical attention when his condition declined resulting in death.

101.

SERGEANT KING, SERGEANT ROGERS, SERGEANT CRAIN, and CAPTAIN HILLMAN showed careless indifference to SMITH's Eighth Amendment right to be free from cruel and unusual punishment when they failed to comply with the "duty status" order regarding SMITH's wheelchair and/or helmet use at all times by SMITH.

102.

WARDEN TANNER, SECRETARY LEBLANC, and LDPS, showed careless indifference to SMITH's Eighth Amendment right to be free from cruel and unusual punishment when they allowed the continuous use of the spit mask after multiple instances of suffocation throughout the United States and when they failed to establish and implement proper procedures and training on the proper use of a spit mask.



Certified True and Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

103.

The above actions by the defendants, either individually or by acting in concert with the other defendants, entitle petitioner, WILLIAMS, to punitive damages under 42 U.S.C. § 1983.

## ATTORNEY'S FEES

104.

The above actions by the defendants, either individually or by acting in concert with the other defendants, also entitle petitioner, WILLIAMS, to recover attorney's fees pursuant to 42 U.S.C. § 1988.

## DISABILITY DISCRIMINATION

105.

SMITH was an individual with a physical and/or mental impairment that substantially limited one or more of SMITH's major life activities.  SMITH had impairment which were documented and/or recorded.  SMITH was also regarded as having and displayed such impairments.  In violation of federal and/or state law, the defendants, individually and/or in concert, failed to accommodate SMITH's disabilities as evidenced and/or established by the facts stated herein as well as those to be shown at the trial hereof.

## JURY DEMAND

106.

Petitioner, WILLIAMS, hereby demands a jury trial in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, petitioner and your plaintiff herein, LATIASHA SMITH WILLIAMS, prays that the defendants herein, STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES LEBLANC, WARDEN ROBERT TANNER, CAPTAIN BRINK HILLMAN, SERGEANT GARY KING, SERGEANT DUSTIN ROGERS, AND SERGEANT JOHN CRAIN, be duly cited to answer this petition and that after all legal delays and due proceedings had that there be judgment herein in favor of the plaintiff, LATIASHA SMITH WILLIAMS, and against the defendants herein, STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES LEBLANC, WARDEN ROBERT TANNER,

Page 20 of 22

Certified True and Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

CAPTAIN BRINK HILLMAN, SERGEANT GARY KING, SERGEANT DUSTIN ROGERS, AND SERGEANT JOHN CRAIN, jointly, severally, and in solido, as follows:

   a) Compensatory and punitive damages;

   b) Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings and legal interest thereon;

   c) Legal interest on all amounts awarded from the date of judicial demand and all costs of these proceedings;

   d) Disability discrimination; and,

   e) Any and all other relief authorized by law.

Petitioner herein further prays for general and equitable relief that may be deemed appropriate under the circumstances.

      Respectfully submitted this 27th day of February, 2020.

                RON S. MACALUSO LAW FIRM LLC

                RON S. MACALUSO (#9616)
                207 N. Cypress St.
                P.O. Drawer 2828
                Hammond, LA 70404
                Telephone: (985) 345-5291
                Facsimile: (985) 345-5293
                Email: rsm@ronmacaluso.com
                RSM File No.: 11-19013
                *(Attorney for petitioner, Latiasha Smith Williams)*

**CLERK – PLEASE SERVE PETITION AS FOLLOWS:**

- **STATE OF LOUISIANA
  THROUGH ITS REGISTERED AGENTS FOR SERVICE OF PROCESS,
  OFFICE OF GOVERNOR JOHN BEL EDWARDS
  1001 N. 23RD STREET, SUITE 268
  BATON ROUGE, LOUISIANA 70802**

  **PARISH OF EAST BATON ROUGE**

- **STATE OF LOUISIANA
  THROUGH ITS REGISTERED AGENTS FOR SERVICE OF PROCESS,
  ATTORNEY GENERAL JEFF LANDRY
  1885 NORTH THIRD STREET
  BATON ROUGE, LOUISIANA 70802**

  **PARISH OF EAST BATON ROUGE**

- **STATE OF LOUISIANA
  THROUGH ITS REGISTERED AGENTS FOR SERVICE OF PROCESS,
  LOUISIANA DIVISION OF ADMINISTRATION OFFICE OF RISK MANAGEMENT
  1201 NORTH THIRD STREET, SUITE 7-210
  BATON ROUGE, LOUISIANA 70802**

  **PARISH OF EAST BATON ROUGE**

  *(SERVICES CONTINUED ON NEXT PAGE)*



Certified True and
Correct Copy
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

- **LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
  **504 MAYFLOWER STREET**
  **BATON ROUGE, LOUISIANA 70802**

  **PARISH OF EAST BATON ROUGE**

- **SECRETARY JAMES LEBLANC**
  **IN HIS CAPACITY AS HEAD OF THE LOUISIANA DEPARTMENT OF PUBLIC**
  **SAFETY AND CORRECTIONS**
  **504 MAYFLOWER STREET**
  **BATON ROUGE, LOUISIANA 70802**

  **PARISH OF EAST BATON ROUGE**

- **WARDEN ROBERT TANNER**
  **27268 HIGHWAY 21 NORTH**
  **ANGIE, LOUISIANA 70426**

  **PARISH OF WASHINGTON**

- **CAPTAIN BRINK HILLMAN**
  **1413 JACKSON STREET**
  **BOGALUSA, LOUISIANA 70427**

  **PARISH OF WASHINGTON**

- **SERGEANT JOHN CRAIN**
  **30589 HIGHWAY 62**
  **FRANKLINTON, LOUISIANA 70438**

  **PARISH OF WASHINGTON**

- **SERGEANT GARY KING**
  **36804 CHAPEL HILL ROAD**
  **FRANKLINTON, LOUISIANA 70438**

  **PARISH OF WASHINGTON**

**CLERK – PLEASE ISSUE LONG ARM CITATION:**

- **SERGEANT DUSTIN ROGERS**
  **24 ST. PAUL ROAD**
  **SANDY HOOK, MISSISSIPPI 39478**

  **COUNTY OF MARION**

/Volumes/Company Files/Docs/11-RSM/Williams (11-19013)/PLEADS/Petition for Damages.022720.docx



**Certified True and Correct Copy**
CertID: 2020022801162

*alice Monaco*

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM

Alteration and subsequent re-filing of the certified copy may violate LA. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3)

EAST BATON ROUGE PARISH
Filed Feb 27, 2020 2:26 PM
Deputy Clerk of Court
C-694434
21/D

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NUMBER: _____          DIVISION: "_____"

LATIASHA SMITH WILLIAMS

VERSUS

STATE OF LOUISIANA AND ITS SUBDIVISION, THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES LEBLANC, WARDEN
ROBERT TANNER, CAPTAIN BRINK HILLMANM SERGEANT GARY KING,
SERGEANT JOHN CRAIN, SERGEANT DUSTIN ROGERS, AND JOHN DOE(S)

FILED: _____          DYCLERK: _____

### REQUEST FOR WRITTEN NOTICE OR ASSIGNMENT AND
### WRITTEN NOTICE OF ANY ORDER OR JUDGMENTS

TO:   HONORABLE DOUG WELBORN
      CLERK OF COURT
      PARISH OF EAST BATON ROUGE

DEAR CLERK;

In accordance with the provisions of Articles 1571 and 1572 of the Louisiana Code
of Civil Procedure, you are hereby requested to give us, as counsel for plaintiff, LATIASHA
SMITH WILLIAMS, in the above numbered cause, written notice by mail ten (10) days in
advance of any date fixed for trial or hearing of this case, whether in exceptions, rules or
merits thereof.

Additionally, in accordance with the provisions of Articles 1913 and 1914 of the
Louisiana Code of Civil Procedure, you are hereby requested to send us immediate notice
of any order or judgment rendered in this case upon entry of such order or judgment.

Respectfully submitted this 27th day of February, 2020.

RON S. MACALUSO LAW FIRM LLC

RON S. MACALUSO (#9616)
207 N. Cypress St.
P.O. Drawer 2828
Hammond, LA 70404
Telephone: (985) 345-5291
Facsimile: (985) 345-5293
Email: rsm@ronmacaluso.com
RSM File No.: 11-19013
*(Attorney for plaintiff, Latiasha Smith Williams)*

Certified True and
Correct Copy
CertID: 2020022801163

East Baton Rouge Parish
Deputy Clerk of Court

Generated Date:
2/28/2020 2:33 PM