UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LATIASHA SMITH WILLIAMS | * | CIVIL ACTION NO.: 2:20-CV-1145 |
| | * | SECTION "T" DIVISION "1" |
| VERSUS | * | JUDGE GREG G. GUIDRY |
| STATE OF LOUISIANA AND ITS SUBDIVISION, THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL. | * | MAGISTRATE JUDGE JANIS van MEERVELD |

***********************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND
AND ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, LATIASHA SMITH WILLIAMS, offers the following to support her Motion to Remand and Alternatively, Motion for Partial Summary Judgment:

I. **FACTUAL AND PROCEDURAL BACKGROUND**

a. **Underlying Facts**

On March 10, 2019, plaintiff's father, Anthony Carl Smith ("Mr. Smith"), was incarcerated in B.B. Rayburn Correctional Center, a facility that is part of the STATE OF LOUISIANA AND ITS SUBDIVISION, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS. Mr. Smith suffered from diabetes, heart disease, and was recovering from open heart surgery during his incarceration. As a result of his recognized medical conditions, Mr. Smith was placed in a Special Management Unit. Due to the medically determined risk of a fall, the Corrections' treating physician had issued "duty status" orders that required Mr. Smith's use of a wheelchair at all times and the wearing of a helmet when not lying in bed.

Defendants disregarded those orders when taking Mr. Smith to the prison's triage unit for medical treatment at 11:24 a.m. on March 10, 2019. Defendants, SERGEANT GARY KING ("KING") and SERGEANT JOHN CRAIN ("CRAIN"), walked Mr. Smith, restrained in a waist belt including being handcuffed and in leg shackles, without a helmet, from Mr. Smith's cell to the Triage Room. When KING and CRAIN were walking Mr. Smith back to his cell, Mr. Smith turned his head and coughed. KING and CRAIN perceived this as a threat by Mr. Smith to spit on them. They threw the handcuffed Mr. Smith to the ground. Since the defendants did not have Mr. Smith in the helmet, Mr. Smith struck his unhelmeted head on the floor. KING, without justification, then thrust his knee into Mr. Smith's ribs, causing bruising of the left hip area. According to Mr. Smith's autopsy report, this along with the head injury, caused Mr. Smith to vomit.

Defendant, CAPTAIN BRINK HILLMAN ("HILLMAN") then placed a spit mask on the handcuffed Mr. Smith while Mr. Smith was still physically restrained on the floor. The type of spit mask selected and used by the defendants has been associated with numerous fatalities due to suffocation in Fairfax County, Virginia in 2001; Jefferson County, Washington in 2004; Davidson County, Tennessee in 2013; Clay County, Florida in 2013; Midland County, Michigan in 2016; Sacramento, California in 2018; Brevard County, Florida in 2018; etc.

Mr. Smith, who was still handcuffed, was eventually placed in a wheelchair to be transported to his cell. Defendants, SERGEANT DUSTIN ROGERS ("ROGERS"), KING, and CRAIN, noticed saliva and vomit on the floor where Mr. Smith had been thrown down. Defendants, ROGERS, KING, CRAIN, and HILLMAN transported a semi-conscious Mr.

Smith back to his cell. Mr. Smith was exhibiting obvious signs of pain and discomfort but was nevertheless placed on his bed face-up, while still handcuffed and wearing the spit mask.

Later, Mr. Smith was moved to another cell in the Special Management Unit. The spit mask was removed briefly so the defendants could take a post-use-of-force photograph of Mr. Smith's face. The first photograph showed visible vomit on Mr. Smith's face. The defendants destroyed that photograph to conceal the evidence and wiped Mr. Smith's face clean before taking another photograph that would not show that Mr. Smith had vomited. The defendants then replaced the spit mask on Mr. Smith.

Mr. Smith's suffering was evidenced by his breathing, grunting, and mumbling. Defendant, ROGERS, suggested that the medical staff be summoned to check on Mr. Smith, but defendant, HILLMAN replied "Don't worry about it. We'll check on him later." The defendants were worried enough about Mr. Smith's condition that they checked for a pulse and to be sure that Mr. Smith was breathing. He was. Defendants left Mr. Smith's cell at 12:17 p.m.

Defendant, KING, looked into Mr. Smith's cell at 12:39 p.m. and saw Mr. Smith lying face up on the bed, in the same position Mr. Smith had been previously placed. At 1:11 p.m. defendant, KING, again saw Mr. Smith lying in the same position. Defendant, KING, later falsified his logbook to show additional checks of Mr. Smith that KING had failed to make. At 2:15 p.m. defendant, KING, again observed Mr. Smith's body in the same position. Defendant, KING, poked Mr. Smith's body with an ink pen and when Mr.

Smith did not move, KING went to alert HILLMAN. CPR was started at 2:30 p.m. and continued until 3:01 p.m.

Mr. Smith was then pronounced deceased.

An autopsy established that Mr. Smith died from aspiration of gastric contents. The autopsy also established that Mr. Smith had suffered left front scalp hemorrhage, a head injury, and injuries to his wrists consistent with being restrained by and struggling against handcuffs.

### b. Procedural Posture

Mr. Smith married Lillie Mae Smith on the 15th day of October, 1983, but they divorced in 1987. At the time of the divorce, their daughter, LATIASHA SMITH, plaintiff herein, was three (3) years old. Since she was the child of parents who married, she is a legitimate child under Louisiana law at the time and entitled to legitimate filiation to her father, Mr. Smith.

Since Mr. Smith had no other children, nor was he married at the time of his death, LATIASHA SMITH WILLIAMS is his sole survivor for purposes of this wrongful death and survival action. Plaintiff filed suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on February 27, 2020.

On April 7, 2020, defendants, STATE OF LOUISIANA AND ITS SUBDIVISION, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, SECRETARY JAMES LEBLANC, and WARDEN ROBERT TANNER filed a notice of removal (Doc. 1) to remove this case to this Court.

## II. LAW AND ARGUMENT

### a. Summary of the Argument

The State of Louisiana has waived its sovereign immunity for suits against it in its own, state courts. It has not similarly waived its 11th Amendment immunity. In this case, the State of Louisiana is a defendant and its attorneys have removed this case to federal court. The Court should decide early in the case whether (as to each claim in the suit) the State has waived its 11th Amendment immunity. If not, each such claim for which the State has not validly waived its immunity should be remanded to state court.

Under Louisiana law, the Louisiana Attorney General lacks authority to waive Louisiana's 11th Amendment immunity as is required to remove a case against the state to federal court. Currently, federal case law holds that, since the Louisiana Attorney General has Constitutional power to represent the State in all civil actions, if he removes a case from state court to federal court, his actions bind the State and are a valid waiver of Louisiana's 11th Amendment immunity.

However, private attorneys representing the State have no similar Constitutional authority. Therefore, their removal of this case was improper.

In the alternative, even if removal of the case was proper, this Court has the power to remand non-federal claims to state court and keep only the federal claims. Plaintiff prays that state law claims be remanded to state court.

Plaintiff also seeks a partial summary judgment holding that, as to **all claims not remanded to state court (including any the Court declines to remand)**, the State of

Louisiana has waived its 11th Amendment immunity from suit and is therefore subjected to claims by the plaintiff for money damages.

   b.  **Argument**

      i.  **This Court should remand this entire case to state court or, in the alternative, render summary judgment holding the State of Louisiana has waived its 11th Amendment immunity as to all claims which remain before this Court.**

Generally, states cannot be sued in federal court by their citizens, nor by citizens of other states. U.S. Const. Amendment XI. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). "However, a state may waive its sovereign immunity at its pleasure, and, in some circumstances, Congress may abrogate it by appropriate legislation." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020).

The State of Louisiana has a public policy against waiving its 11th Amendment immunity. This policy is inherent in a statute passed by the Legislature: "No suit against the state or a state agency or political subdivision shall be instituted in any court than a Louisiana state court." La. R.S. 13:5106(A). In light of this legislatively declared policy, cases decided before 2002 held that Louisiana's Attorney General does not have the power to waive the State's 11th Amendment immunity. See, e.g., *Dagnall v. Gegenheimer*, 631 F.2d 1195, 1196 (5th Cir. 1980) ("Louisiana law makes clear that no attorney for the State could have the authority to waive its eleventh amendment immunity.")

That changed after the Supreme Court's decision in *Lapides v. Board of Regents of The University System of Georgia, et al*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). *Lapides* concerned waiver of Georgia's 11th Amendment immunity. Like Louisiana, Georgia has not waived its 11th Amendment immunity by statute. Also like

Louisiana, the Georgia Attorney General has not been authorized to waive the state's 11th Amendment immunity but has been authorized to represent the state in all civil cases. In *Lapides*, Georgia was a defendant, and the Attorney General of Georgia removed the case to federal court. The U.S. Supreme Court held the removal was a valid waiver of the state's 11th Amendment immunity and denied a motion to remand.

This rule has subsequently been applied by lower courts when the Louisiana Attorney General has removed cases against Louisiana to federal court. In *Varnado v. Hegmann*, 211 F.Supp.2d 801 (M.D. La. 2002), the trial court had held - before *Lapides* was decided - that removal to federal court by the State of Louisiana was improper because the State Attorney General lacked the authority to waive the State's 11th Amendment immunity. Then, after *Lapides* was decided, the court in *Varnado* reversed itself, finding that it was then bound to follow *Lapides* and therefore a removal by Louisiana's Attorney General was a valid waiver. (In Varnado, the State was represented by the Louisiana Department of Justice.)

Later cases have applied this new rule when the State of Louisiana, acting through an assistant attorney general in the Louisiana Department of Justice removed cases to federal court. See, e.g., *Martin v. Dep't of Children & Family Servs.*, No. CV 19-11876-WBV-MBN, 2020 WL 1284963, at *4 (E.D. La. Mar. 18, 2020); *Hicks v. Dep't of Pub. Safety & Corr.*, No. CV 19-108-SDD-RLB, 2020 WL 428116 (M.D. La. Jan. 27, 2020); *Williams v. Louisiana*, No. CV 17-453-JWD-EWD, 2019 WL 1003645, at *3 (M.D. La. Feb. 28, 2019); *Holt v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, No. 1:11-0721, 2011 WL

2620361 (W.D. La. July 1, 2011); *Spooner v. Jackson*, 251 F. App'x 919, 920 (5th Cir. 2007).

The power of the Attorney General to bind the state in litigation has its roots in the Louisiana Constitution. "There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state … The attorney general shall have the authority… to institute, prosecute, or intervene in any civil action or proceeding." La. Const. art. IV, §8. While the Attorney General may have the power to hire private counsel to perform some of his duties, his discretion to contract with private lawyers is not unfettered. For instance, the Attorney General needs legislative approval to hire private counsel who are paid by contingency fee. *Meredith v. Ieyoub*, 96-1110 (La. 9/9/97), 700 So. 2d 478. The Legislature has not granted authority to the Attorney General to delegate to private counsel the power to remove cases to federal court and thereby waive the State's 11th Amendment immunity.

It is true that courts have applied the *Lapides* rule to cases where the State of Louisiana was represented by private counsel rather than the Attorney General or Department of Justice. However, those Courts did not address the distinction between the authority of private counsel and the authority of the State's Attorney General. See, *e.g., Frey v. Bd. of Supervisors of Louisiana State Univ. & A&M Coll.*, No. CV 16-00489-BAJ-EWD, 2018 WL 4039181 (M.D. La. Aug. 23, 2018); *Crockett v. Louisiana Corr. Inst. for Women*, No. CV 17-10186, 2018 WL 1313170, (E.D. La. Mar. 14, 2018); *JMCB, LLC v. Bd. of Commerce & Indus.*, 293 F. Supp. 3d 580 (M.D. La. 2017); *Tony's Towing, Inc.*

*v. Louisiana*, No. CIV.A. 14-00176-BAJ, 2014 WL 5683658 (M.D. La. Nov. 4, 2014); *Simmons v. Sabine River Auth. of Louisiana*, 823 F. Supp. 2d 420 (W.D. La. 2011).

This Court should now hold, as a matter of first impression, that the Fifth Circuit's rule in *Dagnall*, *supra*, applies and - without an explicit grant of authority - private counsel representing the State may not remove cases against the State to federal court because that removal waives the State's 11th Amendment immunity. The Court should, therefore, remand this case to state court.

In the alternative, should this Court hold to the contrary, it should render a summary judgment explicitly recognizing that the State has waived its 11th Amendment immunity with respect to all claims in this suit, whether already filed, or yet to be filed[1]. Fairness requires that the State cannot have it both ways: if its removal to federal court was valid, it must live with the consequences of that removal under *Lapides* including the loss of its 11th Amendment immunity.

### ii.  Remand of non-federal claims

Even if this case was validly removed, the Court has discretion to remand the state law claims and keep only the federal claims. According to 28 U.S.C. 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

---

[1] When a state validly waives its 11th Amendment immunity in a case, the waiver applies to all claims in the case, including any claims added later by amendment. *Jackson v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 15-490-JJB-RLB, 2016 WL 482049 (M.D. La. Feb. 5, 2016).

>    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In *Levy v. Office of the Legislative Auditor*, 362 F.Supp.2d 729 (M.D. La. 2005), an employee of the Legislative Auditor's office sued his employer in state court under both state and federal causes of action. Defendants removed it to federal court. The trial court undertook a careful review of the jurisprudence and held the state had validly waived its 11th Amendment immunity by removing the case to federal court. However, since the State of Louisiana is not a "person" liable under §1983, and there is no *respondeat superior* liability under §1983, those federal claims against the State got dismissed, leaving only state law claims against the State. The trial court then remanded the state law claims to state court, finding:

> The facts and legal principles on which the state law claims are based are substantially different than the federal claims. There is a definite possibility of juror confusion if the trial of both the state and federal claims are tried at the same time. Thus, the Court declines to exercise its discretion to hear the state law claims. *Levy*, *supra*, at 735–736.

Here, the federal claim against the State of Louisiana arises under the Americans with Disabilities Act ("ADA"). (Plaintiff also has §1983 claims against other defendants.) Under Title II of the ADA, Congress has abrogated the states' 11th Amendment Immunity for all claims which are also violations of rights under the 14th Amendment and created thereby an action for money damages against states. *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). If this court holds that, by removing the case to federal court, the State has waived its 11th Amendment immunity defense the waiver should apply to all claims in this suit including not only state law claims but also against any ADA claims that are not otherwise violations of the 14th Amendment.

For any claims which this Court holds that 11th immunity is not waived, plaintiff requests that those claims be remanded to state court so they can proceed there as originally filed.

### III. **CONCLUSION**

Plaintiff, LATIASHA SMITH WILLIAMS, prays that that this entire case be remanded to state court. Alternatively, plaintiff requests that this court render a partial summary judgment holding that the STATE OF LOUISIANA, AND ITS SUBDIVISION, THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, and the other defendants in their official capacities have waived its 11th Amendment immunity as to all claims in this suit, including but not limited to: state law claims and claims under the ADA whether they include violations of the 14th Amendment or not. Plaintiff also prays that all state law claims, AND any claims for which the State has *not* validly waived its 11th Amendment immunity be remanded to state court.

Respectfully submitted this 7th day of May, 2020.

    RON S. MACALUSO LAW FIRM, LLC

    */s/ Ron S. Macaluso*
    RON S. MACALUSO (#9616)
    207 N. Cypress St.
    P.O. Drawer 2828
    Hammond, LA 70404
    Telephone: (985) 345-5291
    Facsimile: (985) 345-5293
    Email: rsm@ronmacaluso.com
    RSM File No.: 11-19013
    *(Attorney for plaintiff, Latiasha Smith Williams)*

/Volumes/Company Files/Docs/11-RSM/Williams (11-19013)/PLEADS/USDC/Memorandum in Support of Motion to Remand and Alternatively for Partial Summary Judgment.050720.docx

Page 11 of 11